MICHAEL K. BUTLER, Adm'r of the Estate of Rebecca L. Butler, Deceased, Plaintiff-Appellee, v. ECONOMY FIRE AND CASUALTY COMPANY, Defendant-Appellant.

Second District   No. 2—89—1024

Opinion filed July 18, 1990.

Daniel E. Compton and William R. Ketcham, both of Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir & Johnson, P.C., of Elgin, for appellant.

Jonathan L. Carbary, of Roeser, Vucha & Carbary, of Elgin, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The action which is the subject of this appeal was filed in the circuit court of Kane County seeking a declaration of rights under an insurance policy issued by the defendant, Economy Fire and Casualty Company, to Rebecca L. Chambers, the original plaintiff in this action. The plaintiff also sought an award of attorney fees pursuant to section 155 of the Illinois Insurance Code (the Code) (Ill. Rev. Stat. 1987, ch. 73, par. 767). The trial court entered summary judgment in favor of the plaintiff, but it refused to award attorney fees. The defendant now appeals from the entry of summary judgment, and the substituted plaintiff appeals separately from the denial of his request for attorney fees.

Two issues are raised on appeal: (1) whether the plaintiff's declaratory action was not timely because it was not brought within two years of the occurrence of the plaintiff's loss; and (2) whether the trial court abused its discretion in finding that the defendant's refusal to pay the plaintiff's claim did not constitute unreasonable and vexatious delay entitling the plaintiff to an award of attorney fees.

The original plaintiff, Rebecca L. Chambers, was issued an automobile insurance policy by the defendant on June 25, 1986. The policy contained a provision labelled "UNINSURED MOTORISTS COVER-

AGE AMENDATORY ENDORSEMENT" (the uninsured motorist coverage) regarding that portion of the policy pertaining to "FAMILY PROTECTION—UNINSURED MOTORISTS COVERAGE." The uninsured motorist coverage contained the following provisions relevant here:

"The **uninsured** or **underinsured** owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle** or **underinsured motor vehicle**. We will pay damages under this coverage caused by an accident with an **underinsured motor vehicle**, only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgements or settlements.

* * *

**EXCLUSIONS**

A. We do not provide Uninsured/Underinsured Motorists Coverage for bodily injury or property damage sustained by any person:

1. If that person or the legal representative settles the bodily injury or property damage claim without our consent.

* * *

7. No suit, action or arbitration proceedings for the recovery of any claim under Family Protection—Uninsured Motorists Coverage shall be sustainable in any court of law or equity unless the insured shall have fully complied with all of the terms of the policy, nor unless commenced within two years after the occurrence of the loss.

* * *

**ARBITRATION**

If we and a **covered person** disagree whether that person is legally entitled to recover damages from the owner or operator of an **uninsured or underinsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration." (Bold face in original.)

On September 11, 1986, Rebecca Chambers was a passenger in an automobile driven by Joseph W. Shearer which was struck by an automobile owned by Patricia Zielke and driven by Donald E. Shanks, Jr. Chambers sustained injuries in the accident which required medical treatment and hospitalization. Chambers notified the defendant of the accident approximately six weeks later.

After the accident, Chambers filed an action in the circuit court of Kane County (the personal injury action) against several of the parties

involved or their representatives (the personal injury defendants) to recover for her injuries. Both Shanks and Zielke, who were defendants in the personal injury action, were covered by insurance policies with limits of $25,000/$50,000. The personal injury action was still pending at the time this appeal was taken, and no judgment or settlement had been reached.

Although the record reveals several communications between Chambers' representatives and the defendant in the period following the accident, Chambers never made a demand on the defendant for payment of any amount owed under the policy's uninsured motorist coverage. At some point, the defendant made known its determination that it was not liable to pay any amount to Chambers under the uninsured motorist coverage because no suit, action, or arbitration proceedings had been filed against the defendant within two years of the accident.

Chambers initiated the instant action on November 9, 1988. Subsequently, Chambers, whose name had been changed to Rebecca L. Butler, was killed in an unrelated incident. Michael K. Butler, administrator of the estate of Rebecca L. Butler, was named as the substituted plaintiff (hereinafter referred to as the plaintiff.) Count I of the complaint sought a declaration of the parties' rights under the policy. Count II alleged that the defendant's "refusal and denial to honor coverage under the uninsured motorist insurance is vexatious and unreasonable and designed to unreasonably delay settlement of Plaintiff's claim" and sought an award of attorney fees pursuant to section 155 of the Code.

Both parties moved for summary judgment, apparently on count I alone without reaching the attorney fees issue. The plaintiff's motion for summary judgment stated that he could not "make a demand upon Defendant to settle under the terms of the uninsured motorists coverage" without first exhausting the insurance policy limits of the defendants as required by the policy (the exhaustion clause). The plaintiff argued that, until recovery was had against the defendants in the personal injury action, it would be premature to demand that the defendant pay out under the uninsured motorist coverage. The plaintiff filed a supplement to his motion for summary judgment which argued that the defendant should be estopped from denying coverage because its communications with the plaintiff created "a reasonable belief" that the claim would be paid.

The defendant also filed a motion for summary judgment. The defendant argued that, although the plaintiff could not be *paid* on a claim against the defendant until he had exhausted the other policy

limits, the plaintiff could have demanded payment or taken other action to assert the claim within two years of the accident. The fact that the plaintiff failed to do so within two years of the accident, the defendant argued, acted to bar the claim pursuant to the policy's time limitation (limitation clause). The defendant asked that the plaintiff's suit be dismissed with prejudice.

A hearing on the cross-motions for summary judgment was held on June 8, 1989. The trial court took the issue under advisement and issued a memorandum opinion on July 10, 1989. The court noted that the "language of the policy is confusing to the point of being misleading." The court held that the plaintiff could not have filed a demand for payment or arbitration against the defendant because the nature and extent of damages, and the sufficiency of the personal injury defendants' coverage, had not yet been determined in the personal injury lawsuit. Accordingly, the court indicated that it would grant the plaintiff's motion for summary judgment. The order did not deal with the question of attorney fees.

The plaintiff submitted a petition for attorney fees pursuant to section 155 of the Code which set out a schedule of fees incurred by the plaintiff's attorneys. At a hearing held September 5, 1989, the trial court entered an order denying the petition for attorney fees because the defendant's refusal to pay the plaintiff's claim did not constitute "unreasonable and vexatious delay." At this time, the trial court also entered a written order memorializing the summary judgment ruling made in its earlier memorandum opinion. The defendant filed a notice of appeal from the entry of summary judgment on October 5, 1989, and the plaintiff filed his notice of appeal from the denial of the petition for attorney fees on October 11, 1989. Our jurisdiction over both appeals is appropriate pursuant to Supreme Court Rule 301 (107 Ill. 2d R. 301).

█ Before we address the parties' arguments, we must resolve the plaintiff's motion, which was ordered taken with the case, to strike from the defendant's brief any argument pertaining to the issue of estoppel. The plaintiff contends that the trial court's ruling did not deal with the estoppel argument and that, therefore, any reference to this issue on appeal is inappropriate. We agree. Although this court may affirm the judgment of the trial court on any basis justified by the record (*Hay v. Albrecht* (1988), 169 Ill. App. 3d 120, 125), the plaintiff has not argued the estoppel issue on appeal. Because we believe that the resolution of this appeal does not require us to address estoppel, we grant the plaintiff's motion to strike from the defendant's brief any argument in this regard.

We first address the defendant's appeal of the entry of summary judgment in favor of the plaintiff. The defendant contends that the trial court should have entered summary judgment in its favor. The defendant argues that the policy language clearly and unambiguously required the plaintiff to initiate a demand for settlement or arbitration upon the defendant within two years of the accident. The plaintiff contends that the trial court correctly found the policy language to be ambiguous in this regard, and he argues that the trial court's interpretation of his obligations under the policy was correct.

■■ ■ A trial court should grant summary judgment where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In ruling on a motion for summary judgment, the trial court must consider all of the evidence before it and construe it most strictly against the movant and liberally in favor of the party against whom judgment is sought. Summary judgment is a drastic means of disposing of litigation and should be granted only when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Contracts of insurance are subject to the same rules of construction applicable to other type of contracts. (*International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 370.) Where, as here, the facts are not in dispute, the interpretation of a contract is a question of law which can be decided on a motion for summary judgment. However, as a question of law, the interpretation of a contract can be made on review independently of the trial court's judgment. *Shorr Paper Products, Inc. v. Aurora Elevator, Inc.* (1990), 198 Ill. App. 3d 9, 12-13.

The defendant argues that the policy language concerning the time within which the plaintiff had to act in order to come within the policy's coverage is clear and unambiguous. The trial court felt that the "language of the policy is confusing to the point of being misleading" because of the apparent conflict between the exhaustion provision and the limitations provision. The trial court apparently accepted the plaintiff's contention that it was impossible to act within the two-year period specified by the limitation provision until the insurance coverage of the personal injury defendants had been exhausted, a process which was not resolved within two years.

We believe that the question of whether the policy is ambiguous or confusing depends on the date upon which the two-year time period in the limitations clause is triggered. The policy merely states that the

insured must initiate any "suit, action or arbitration proceedings *** within two years after the occurrence of the loss." The defendant appears to assume that the phrase "occurrence of the loss" is synonymous with the date of the accident in which the plaintiff suffered injury. Were this so, then we would agree with the trial court that the limitations clause appears to conflict with the exhaustion clause. An insured often must bring suit in order to exhaust the coverage of an underinsured motorist, a process which could, as here, take more than two years.

█ In construing a contract, it is presumed that all provisions were inserted for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions. (*Magnuson v. Schaider* (1989), 183 Ill. App. 3d 344, 358.) We note that there is another interpretation to the phrase "occurrence of the loss" which would eliminate any conflict between the exhaustion clause and the limitations clause.

█ In the context of the uninsured motorist coverage, the "loss" which will be incurred by the plaintiff is that of damages to the extent that they exceed the insurance policy limits of the defendants in the personal injury action. In other words, the "loss" stems from the tort-feasors' underinsurance relative to the plaintiff's damages. We believe that the plaintiff cannot be said to have suffered a loss until it is determined, either by judgment in or settlement of the personal injury lawsuit, whether the insurance coverage of the defendants in the personal injury action is sufficient to compensate the plaintiff for the damages incurred.

We recently addressed a similar situation in our decision in *Heneghan v. State Security Insurance Co.* (1990), 195 Ill. App. 3d 447. In *Heneghan,* the plaintiff was insured under a policy requiring that the plaintiff must assert an uninsured motorist claim against the insurer "within two (2) years after the occurrence of the loss." (195 Ill. App. 3d at 449.) The plaintiff claimed that a certain uninsured driver was liable for the plaintiff's injuries, but the uninsured motorist contested liability. We determined that "it would be absurd to require plaintiff to file a claim for arbitration of an uninsured-motorist claim" before it had been determined in separate litigation whether the uninsured party was, in fact, liable for the plaintiff's injuries. (*Heneghan,* 195 Ill. App. 3d at 453.) We concluded that the limitations period did not begin to run until the uninsured party was adjudged the responsible party in other proceedings. *Heneghan,* 195 Ill. App. 3d at 454.

Here, the plaintiff also seeks to establish in the personal injury action that the defendants in that suit are liable to him for the dam-

ages. Moreover, the plaintiff must determine whether the personal injury defendants' insurance policy limits will be sufficient to cover his damages. In short, at this juncture there is simply no way to determine whether the defendants in the personal injury action are actually "underinsured" relative to the damages for which they are responsible. Accordingly, we believe that here, as in *Heneghan*, the limitations period begins to run only when this determination is made via settlement or judgment. Stated another way, there has not yet been an "occurrence of [a] loss" under the plaintiff's policy, and so the period has not yet begun to run.

The defendant argues that *Shelton v. Country Mutual Insurance Co.* (1987), 161 Ill. App. 3d 652, compels us to reach a different conclusion. The facts in *Shelton*, however, differ from those in the instant case in two crucial aspects. First, the plaintiff in *Shelton* exhausted the liability bonds and coverage of the other parties 8½ months *before* the period of limitations had expired, so the insured could still have timely asserted a claim against the insurer. Second, the court noted that the policy at issue in *Shelton* specifically stated that "the limitations period begins to run on the date of the *accident*." (Emphasis added.) (*Shelton*, 161 Ill. App. 3d at 657.) The court distinguished the case from *Trust Co. v. Iroquois Auto Insurance Underwriters, Inc.* (1936), 285 Ill. App. 317, wherein the limitations period at issue was triggered not by the occurrence of the accident, but by the "happening of the loss." (*Shelton*, 161 Ill. App. 3d at 657.) The triggering language in *Iroquois* is also very similar to that in the case at bar. Thus, we believe that both *Shelton* and *Iroquois* implicitly support the result reached here.

■ We conclude that there has not been an occurrence of a loss under the plaintiff's uninsured motorist coverage because the liability, and the sufficiency of policy coverage, of the personal injury defendants has not yet been determined in the other action. Accordingly, the limitations period has not yet begun to run against the plaintiff. Thus, we affirm the trial court's entry of summary judgment in favor of the plaintiff on the portion of the complaint seeking declaratory relief.

■ We now must address the plaintiff's separate appeal from the trial court's denial of his petition for attorney fees pursuant to section 155 of the Code. Section 155 allows a trial court to assess attorney fees against an insurer whose refusal to settle a claim causes unreasonable and vexatious delay. (Ill. Rev. Stat. 1989, ch. 73, par. 767.) Where there is a bona fide dispute about coverage, however, delay in settling a claim may not violate the statute. (*Mohr v. Dix Mutual County Fire Insurance Co.* (1986), 143 Ill. App. 3d 989, 999.) The de-

termination of whether an insurer's delay is vexatious and unreasonable is a factual one committed to the sound discretion of the trial court; its determination will not be disturbed on review unless an abuse of discretion is demonstrated in the record. *Dark v. United States Fidelity & Guaranty Co.* (1988), 175 Ill. App. 3d 26, 30-31.

■ Here, we cannot say that it was an abuse of discretion for the trial court to conclude that the insurer's refusal to settle the plaintiff's claim did not constitute unreasonable or vexatious delay. Though we have arrived at an interpretation of the policy different from that advanced by the defendant, we believe it was reasonable for the trial court to conclude that the dispute over coverage was *bona fide.* We therefore affirm the trial court's order refusing to award attorney fees to the plaintiff.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

WOODWARD and INGLIS, JJ., concur.