CELESTINE FORD, Plaintiff-Appellant, v. DOVENMUEHLE MORTGAGE, INC., Defendant-Appellee.

First District (5th Division)    No. 1—93—1457

Opinion filed June 9, 1995.

Daniel A. Edelman, Cathleen M. Combs, Tara G. Redmond, J. Eric Vander Arend, and Michelle A. Weinberg, all of Edelman & Combs, and Lawrence Walner & Associates, Ltd., both of Chicago, for appellant.

James R. Daly, Suzanne S. Greene, and Jane D. Wessel, all of Jones, Day, Reavis & Pogue, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Celestine Ford, filed a two-count complaint alleging that the defendant, Dovenmuehle Mortgage, Inc. (Dovenmuehle), a mortgage service company, breached a Veterans Administration (VA) guaranteed residential mortgage contract and violated section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act

(the Consumer Fraud Act) (Ill. Rev. Stat. 1991, ch. 121¹/₂, par. 262 (now 815 ILCS 505/2 (West 1992))) by imposing a late charge computed on 4% of the aggregate monthly payment of principal, interest, taxes and insurance (PITI) rather than 4% of the monthly installment of principal and interest (P&I). This appeal is taken from the denial of plaintiff's motion for "classwide summary determination of major issues" and the granting of defendant's cross-motion for summary judgment on both counts.[1]

The material facts of this case are undisputed. In 1975, plaintiff obtained a mortgage loan, guaranteed by the Veterans Administration, from Percy Wilson Mortgage and Finance Corporation. The mortgage documents executed at closing consisted of a mortgage contract and a promissory note, which were written on standard VA forms. Dovenmuehle serviced plaintiff's mortgage and assessed late charges against plaintiff's delinquent payments.

The late charge provision of plaintiff's mortgage contract provided in pertinent part:

> "Together with, and in addition to, the monthly payments of principal and interest payable under the terms of the note secured hereby, the Mortgagor will pay to the Mortgagee *** on the first day of each month until the said note is fully paid, the following sums:
>
>> (a) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus taxes and assessments next due on the mortgaged property ***
>>
>> (b) The aggregate of the amounts payable pursuant to subparagraph (a) and those payable on the note secured hereby, shall be paid in a single payment each month, to be applied to the following items in the order stated:
>>
>>> I. ground rents, if any, taxes, assessments, fire, and other hazard insurance premiums;
>>>
>>> II. interest on the note secured hereby; and
>>>
>>> III. amortization of the principal of the said note.
>
> Any deficiency in the amount of any such aggregate monthly payment shall, unless made good prior to the due date of the next payment, constitute an event of default under this mortgage. At Mortgagee's option, Mortgagor will pay a 'late charge' not exceeding four per centum (4%) of any installment when paid more than

---

[1]By leave of the trial court, an *amicus curiae* brief was filed by the Mortgage Bankers Association of America in support of defendant's cross-motion for summary judgment.

fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments ***."

Plaintiff's motion for "classwide summary determination of major issues," brought pursuant to sections 2—801 and 2—1005(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 2—801, 2—1005(d) (now 735 ILCS 5/2—801, 5/2—1005(d) (West 1992))), requested summary judgment on the breach of contract count of her complaint. With respect to her request for summary judgment, plaintiff argued that the term "installment" in the late charge clause should be construed to mean principal and interest only since that was how that term was used on page one of the note and mortgage contract and since the late charge clause in the mortgage contract used the term "aggregate monthly payment" to refer to principal, interest, taxes and insurance. Alternatively, the plaintiff argued that the term "installment" was ambiguous and should be construed against the drafter or user of a form contract in accordance with the doctrine of *contra proferentum.*

Defendant's cross-motion for summary judgment on both counts, and its memorandum in support thereof, argued that, as to the breach of contract count, the mortgage contract unambiguously provided for late charges to be assessed on total overdue amounts of principal, interest, taxes and insurance. Defendant alternatively argued that, even if an ambiguity was found to exist, the pertinent extrinsic evidence, including the VA's regulations and interpretations which authorized imposition of late charges on PITI, and the applicable rules of contract construction compelled resolution of the ambiguity in favor of Dovenmuehle. With respect to the consumer fraud count, defendant argued that its late charge practice was clearly authorized by plaintiff's mortgage contract and by the laws administered by the VA, a regulatory body acting under statutory authority of the United States, and, thus, was exempt from the Consumer Fraud Act pursuant to section 10b(1) of that act (Ill. Rev. Stat. 1989, ch. 121$^1$/$_2$, par. 270b(1) (now 815 ILCS 505/10b(1) (West 1992))).

In granting defendant's motion for summary judgment, the trial court found that the documents were not ambiguous. It also rejected plaintiff's argument that the word "installment," as it appeared in those documents, meant principal and interest only. The court ruled that the first use of the word "installment," which occurred in the payment clause of those documents, did not define "installment" but, rather, was a "description of the method and timing of payment of principal and interest." The court further found that the terms "installment" and "payment" were used interchangeably throughout the mortgage documents and that those terms took their meaning

from "modifying language, context, or both." In the context of the late payment charge provision, the court held that the term "installment" included the totality of principal, interest, taxes and insurance. While specifically noting that it did not need to resort to extrinsic evidence to interpret the contract terms, the court recognized that its interpretation was permitted by VA regulations as evidenced by an opinion letter from the Solicitor of the VA. That opinion letter also served as a basis for the court's grant of summary judgment to the defendant on count I of plaintiff's complaint alleging consumer fraud violations and the court's finding that the Consumer Fraud Act did not apply.

In accordance with section 2—1005 of the Code of Civil Procedure, summary judgment is to be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c) (now 735 ILCS 5/2—1005(c) (West 1992)).) Where the facts are not in dispute, the interpretation of a written contract is a question of law and summary judgment is appropriate. (*USG Interiors, Inc. v. Commercial & Architectural Products, Inc.* (1993), 241 Ill. App. 3d 944, 609 N.E.2d 811; *Butler v. Economy Fire & Casualty Co.* (1990), 199 Ill. App. 3d 1015, 557 N.E.2d 1281.) Our review in this instance is *de novo* such that we may make a determination independent of that made by the trial court. *Butler*, 199 Ill. App. 3d 1015, 557 N.E.2d 1281; *Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 587 N.E.2d 494.

Where the sole dispute between the parties concerns the meaning of a contract provision, the threshold issue is whether the contract is ambiguous. (*USG Interiors, Inc.*, 241 Ill. App. 3d 944, 609 N.E.2d 811) In making this determination, the court must construe the contract as a whole, viewing each part in light of the others. (*E.g., Board of Trade v. Dow Jones & Co.* (1983), 98 Ill. 2d 109, 456 N.E.2d 84.) An ambiguity is said to exist in a contract when the contract contains language that is susceptible to more than one reasonable interpretation. (*Farm Credit Bank v. Whitlock* (1991), 144 Ill. 2d 440, 581 N.E.2d 664; *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 578 N.E.2d 926.) A contract is not ambiguous simply because the parties disagree as to its meaning. *Kokinis v. Kotrich* (1979), 74 Ill. App. 3d 224, 392 N.E.2d 697, *aff'd* (1980), 81 Ill. 2d 151, 407 N.E.2d 43; *White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255.

The plaintiff argues on appeal that the trial court erred in failing to find the mortgage contract ambiguous or, alternatively, in failing to give the term "installment" a single and uniform meaning of

principal and interest only. In support of her ambiguity argument, the plaintiff relied on the trial court's attribution of different meanings to that term depending on the context within which it appeared in the mortgage documents. Plaintiff contends that the result of such an interpretation creates a likelihood of misunderstanding and, thus, an ambiguity. The plaintiff also relies on *Moore v. Lomas Mortgage USA* (N.D. Ill. 1992), 796 F. Supp. 300, where the court therein reviewed similar contractual language and determined that the contract was ambiguous.[2]

■ Although other courts and other judges have reviewed similar contractual language and have reached differing conclusions,[3] we are not compelled to adopt their conclusions with respect to our determination of ambiguity. Moreover, the mere fact that they have reached different conclusions, some finding ambiguity and some not, does not compel us to find the existence of an ambiguity. (See *USG Interiors, Inc.*, 241 Ill. App. 3d 944, 609 N.E.2d 811 (mere fact that parties disagree on a term of a contract is not proof of ambiguity).) We must make a *de novo* and independent review of the four corners of the documents (see *La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370 N.E.2d 188; *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 587 N.E.2d 494), giving the words of the contract their common and generally accepted meanings (*USG Interiors, Inc.*, 241 Ill. App. 3d 944, 609 N.E.2d 811; *Kokinis*, 74 Ill. App. 3d 224, 392 N.E.2d 697), to determine whether, in our opinion, there is only one fair and reasonable interpretation (see *In re Marriage of Whetstone* (1980), 87 Ill. App. 3d 164, 409 N.E.2d 41 (contract ambiguous where fairly and reasonably susceptible to more than one interpretation)).

As commonly defined, the term "installment" is a "[p]artial payment of a debt ***. Different portions of the same debt payable at different successive periods as agreed. Partial payments on account of a debt due." (Black's Law Dictionary 798 (6th ed. 1990).) The term "installment" appears in several sections of the note and mortgage contract executed by the plaintiff and, as will be discussed below,

---

[2]Although the court in *Moore v. Lomas Mortgage USA* (N.D. Ill. 1992), 796 F. Supp. 300, found the mortgage contract to be ambiguous, it utilized contract construction principles to find that the term "installment" could be construed to mean PITI. Plaintiff in the instant case disagrees with the latter conclusion and argues that it is contrary to Illinois contract law.

[3]See, *e.g.*, *Moore v. Lomas Mortgage USA* (N.D. Ill. 1992), 796 F. Supp. 300, and *Andrews v. Fleet Real Estate Funding Corp.* (E.D. Pa. 1987), 78 Bankr. 78. The parties also have cited to several unpublished lower court opinions in Illinois and other States.

encompassed different components in each of its contextual usages. However, an ambiguity or uncertainty is not created by that fact alone as long as the meaning of the term, namely, the referents to which the term applied, remains clear and certain in the context within which the term was used.

Here, even though the debt components to which the term "installment" referred varied within the documents involved, the term itself was used consistently to mean partial payment of a debt at different successive periods. As the debt obligations under the documents in question expanded, due to the subsequent introduction of additional covenants and liabilities, the amount of the partial payment or "installment" increased correspondingly. That is to say, while the definition of "installment" as a partial payment over successive periods remained the same, the composition or increments of the "installment" varied in the different contexts within which the term was used.

Page one of the mortgage, for example, stated that "the said principal and interest [will be] payable in monthly installments *** until *** the final payment of principal and interest." Similar language appeared in the mortgage note along with a provision that "any deficiency in the payment of any such installment of principal and interest" gave the holder the option to declare the note immediately due. In these provisions, as the plaintiff contends, installment was a monthly payment of principal and interest calculated and identified to be $231.14. However, in this initial usage, the term "installment" was not expressly defined or limited to exclusively mean principal and interest only. That term was not included within quotation marks or followed by a parenthetical so as to suggest such a limitation or exclusive use. Moreover, it would be nonsensical to include within that term in this early section of the documents a reference to taxes and hazard insurance since those referents had not yet been identified as debt obligations of the mortgagor.

The term "installment" next appears in the provisions of the note and mortgage allowing for prepayment of "the entire indebtedness or any part thereof not less than the amount of one installment, or one hundred dollars ($100.00), whichever is less." In this context, the term "installment" could only consist of the outstanding principal since the indebtedness evidenced by the promissory note and acknowledged in the mortgage contract was the principal amount owed, here being $28,500. In accordance with both documents, interest was owed only to the extent that the principal balance remained outstanding (principal sum is payable with interest "on the unpaid balance until paid").

The third context within which the term "installment" appeared was in the late payment section of the mortgage contract. This section was inserted subsequent to the introduction of additional covenants that created additional debt obligations such as for taxes and hazard insurance. The covenant relevant to our discussion states in pertinent part:

> "AND SAID MORTGAGOR covenants and agrees:
>
> *** to pay to the Mortgagee, as hereinafter provided, until said note is fully paid, (1) a sum sufficient to pay all taxes and assessments on said premises *** that may be levied by authority of the State of Illinois, or of the county, town, village, or city in which the said land is situate, upon the Mortgagor on account of the ownership thereof; (2) a sum sufficient to keep all buildings that may at any time be on said premises, during the continuance of said indebtedness, insured for the benefit of the Mortgagee in such type or types of hazard insurance, and in such amounts, as may be required by the Mortgagee."

Before the appearance of this covenant, the only indebtedness recognized in the mortgage contract was the indebtedness set forth in the promissory note for the principal and any interest that would subsequently become due. Any usage of the term "installment" or "payment" prior to this latter covenant could only refer to principal and interest. Logically, it would follow that, subsequent to the insertion of the covenant and agreement to pay additional sums for taxes and insurance, the monthly installment or payment required to be made by the mortgagor to the mortgagee would correspondingly expand to include those additional sums for taxes and hazard insurance. Thus, the late payment section of the mortgage contract, which appeared after the covenant to pay taxes and insurance, permissibly and unambiguously provided for a single monthly payment or installment that would include sums for fire and other hazard insurance premiums and taxes and assessments "[t]ogether with, and in addition to, the monthly payments of principal and interest payable under the terms of the note secured hereby." In the language immediately following, the mortgagor was permitted to assess a late charge on "[a]ny deficiency in the amount of any such aggregate monthly payment [at a rate] not exceeding four per centum (4%) of any installment when paid."

■ Our supreme court stated in *Board of Trade v. Dow Jones & Co.* (1983), 98 Ill. 2d 109, 456 N.E.2d 84, "[w]ords derive their meaning from the context in which they are used, and the contract must be viewed as a whole 'by viewing each part in light of the others.'" (98 Ill. 2d at 122-23, 456 N.E.2d at 90, quoting *La Throp v. Bell*

*Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 381, 370 N.E.2d 188, 191.) Here the plaintiff would contend that, because the components referred to by the term "installment" varied in the documents involved, the meaning of that term was thereby rendered ambiguous. However, for the reasons stated, we disagree. Quite the opposite is more the case. Viewing the mortgage documents as a whole, and each part in light of the others, establishes the internal consistency in the use of the questioned term. It is clear that in the promissory note, which evidenced an indebtedness only for the principal sum and interest payable on the unpaid balance, the term "installment" did not include taxes and insurance. While the mortgage contract acknowledged the indebtedness under the promissory note, it thereafter created additional obligations and indebtedness, which, of relevance to the instant case, included liabilities for hazard insurance and taxes. Thereafter, the term "installment" encompassed additional referents or components, and its dollar value expanded and became an amount separate and distinct from its prior values. Although the dollar amount of the installment changed, its generic meaning, the partial payment of a debt payable at different successive periods, remained consistent. Moreover, the varying dollar amounts did not create any uncertainty or ambiguity in the mortgage contract since, in each context, the term "installment" was subject to a single reasonable interpretation. As the mortgagor's obligations and indebtedness increased under the terms of the mortgage, so too did the corresponding amount of the monthly payment or installment. Thus, for these reasons, we agree with the trial court's grant of summary judgment on the breach of contract count based upon its determination that the term "installment" in the late charge section of the mortgage included principal, interest, taxes and insurance and that the late charge could be assessed against that entire amount.

■ In view of our conclusion that the mortgage documents were unambiguous, we need not reach plaintiff's arguments regarding use of extrinsic evidence (see *La Throp v. Bell Federal Savings & Loan Association*, 68 Ill. 2d at 384, citing 4 Williston, Contracts § 629, at 923 (3d ed. 1961)) and the applicability of the doctrine of *contra proferentum*. These issues only have bearing when an ambiguity exists on the face of the contractual documents. (See *USG Interiors, Inc. v. Commercial & Architectural Products, Inc.*, 241 Ill. App. 3d 944, 609 N.E.2d 811.) With respect to plaintiff's argument that the trial court erred in applying extrinsic evidence in the form of an opinion letter by the Solicitor of the VA, we disagree. As noted above, while the trial court made reference to this opinion letter as further support for its decision, the court noted that its decision was not

premised on that letter but instead was based upon its review of the contractual documents.

■ With respect to plaintiff's argument regarding the dismissal of her consumer fraud claim and her allegations therein of systematic overcharges, we need not address her contentions in detail. The plaintiff conceded that this argument was predicated on her breach of contract theory and her allegations that the defendant breached the mortgage contract by charging excessive late fees calculated on PITI rather than P&I. Our affirmance of summary judgment to defendant on the breach of contract count was based on a conclusion that the late charges were calculated in accordance with the terms of the mortgage contract. Thus, there was no systematic overcharge that would constitute an unfair or deceptive act or practice prohibited by the Consumer Fraud and Deceptive Business Practices Act (see Ill. Rev. Stat. 1991, ch. 121$^{1}/_{2}$, par. 262 (now 815 ILCS 505/2 (West 1992)); see also *Moore v. Lomas Mortgage USA*, 796 F. Supp. 300), and we affirm the grant of summary judgment to the defendant on this count as well.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and T. O'BRIEN, J., concur.