**SEARS, ROEBUCK AND CO., Appellant,**

v.

**AIG ANNUITY INSURANCE CO., et al., Appellees.**

No. 05–07–00758–CV.

Court of Appeals of Texas, Dallas.

Aug. 21, 2008.

Rehearing Overruled Dec. 17, 2008.

Jeffrey S. Levinger, Hankinson Levinger LLP, Brett D. Kutnick, Thomas F. Allen, Jr., Carrington, Coleman, Sloman & Blumenthal, L.L.P., Jeffrey M. Tillotson, Eric W. Pinker, Lynn, Tillotson & Pinker, L.L.P., Dallas, TX, for Appellant.

Mark S. Werbner, Sayles-Werbner, P.C., Eric D. Pearson, Heygood, Orr, Reyes, Pearson and Bartolomei, Nina Cortell, Hayes & Boone, L.L.P., P. Michael, Jung, Strasburger & Price, L.L.P., Dallas, TX, David E. Keltner, Kelly Hart & Hallman, LLP, Paul R. DeFilippo, Wollmuth Maher & Deutsch LLP, New York, NY, for Appellees.

Before Justices WRIGHT, BRIDGES, and MAZZANT.

## OPINION

Opinion by Justice WRIGHT.

Sears, Roebuck and Co. (Sears) appeals from a judgment awarding a group of investors over $61,453,826.00 on their claim that Sears breached an indenture agreement. In seven issues, Sears contends: (1) the special redemption provision in the indentures unambiguously provides that Sears may redeem the bonds if customer receivables fall below a certain threshold for three consecutive months; (2) the sale of Sears' credit card business triggered the special redemption provision as a matter of law because the amount of customer receivables fell below the redemption

threshold for a three-month period; (3) the trial court erred in submitting the breach of contract question to the jury; (4) the investors failed to present any evidence of the level of customer receivables during the three-month period following Sears' sale of its credit card business; (5) the evidence is legally and factually insufficient to support the damages award; (6) the trial court erred in refusing to submit Sears' requested question and instruction on its affirmative defense of mitigation of damages; and (7) the trial court erred in denying Sears' motion for new trial on the ground that one of the jurors was statutorily disqualified. We sustain Sears' first and fourth issues, reverse the trial court's judgment, and render a take nothing judgment against the investors.

## Background

In 1991 and 1992, Sears entered into four indenture agreements. Pursuant to the indentures, Sears issued a series of redeemable bonds in 1991 and 1992. The bonds were to mature either in 2011 or 2012. The bonds provided for semi-annual interest payments and the repayment of the par value at maturity or upon redemption. Appellees, a group of institutional investors, purchased the bonds in the secondary market.

In March 2003, Sears announced its plan to sell its credit card business, including the receivables generated by that business, and to use the proceeds from the sale to retire its debt. Sears entered into a Purchase, Sale and Servicing Transfer Agreement with Citicorp on July 15, 2003. This agreement provided for the sale of Sears' credit card business to Citicorp. The sale of over $29 billion in credit card receiv-

ables occurred on November 3, 2003. Pursuant to the redemption provision in the indentures, Sears redeemed the bonds on February 2, 2004.

The investors filed suit against Sears on October 12, 2004. They alleged claims for breach of contract, estoppel, violations of the Trust Indenture Act, and unjust enrichment.[1] According to the investors, Sears did not have the right to redeem the bonds under section 4.8 of the indentures because the requirements for redemption had not been met. The case was tried before a jury who returned a verdict in favor of the investors. The trial court rendered judgment in the amount of $61,453,826.00. This appeal followed.

## Indenture Agreements

■ In its first issue, Sears contends the indentures unambiguously allow it to redeem the bonds if customer receivables fall below a certain threshold for three consecutive months. The investors counter that Sears may redeem the bonds if the customer receivables *decline* over three consecutive months. They contend that the bonds are not redeemable following a one-time sale of customer receivables. Alternatively, the investors argue the indentures are ambiguous.

■ Pursuant to section 14.12 of the indentures, Illinois law governs the indenture agreements. Accordingly, we follow Illinois law in construing the indentures. The construction of a contract is a question of law for the court. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801, 821 (2005). If the contract terms are unambiguous, the court looks only to the language of the

---

1. At the close of their case, the investors withdrew their claims for unjust enrichment and estoppel. The trial court directed a verdict on those claims along with the investors' claim for violations of the Trust Indenture Act. Thus, we consider only the investors' claim for breach of contract.

contract to ascertain the parties' intent. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill.2d 440, 163 Ill.Dec. 510, 581 N.E.2d 664, 667 (1991). Contract language is not ambiguous merely because the parties disagree about its meaning. *Ford v. Dovenmuehle Mortgage, Inc.*, 273 Ill.App.3d 240, 209 Ill.Dec. 573, 651 N.E.2d 751, 754 (1995). A contract is ambiguous only if the language used is reasonably susceptible to more than one meaning. *Lenzi v. Morkin*, 116 Ill.App.3d 1014, 72 Ill.Dec. 414, 452 N.E.2d 667, 669 (1983), *aff'd*, 103 Ill.2d 290, 82 Ill.Dec. 644, 469 N.E.2d 178 (Ill.1984).

The indentures included the following provision:

> Section 4.8. Unless otherwise provided in the form of Securities of any series under Section 2.1, the Securities of that series are subject to redemption at any time prior to Stated Maturity, in whole or in part, at the option of the Company at 100% of the principal amount of such Securities to be redeemed together with interest accrued and unpaid to the Redemption Date if and whenever, as of the last day of each month in any three—calendar—month period, the amount of outstanding Customer Receivables arising from the merchandise business (including credit granting) of the Company and any Subsidiary or Subsidiaries which succeed to all or part of the merchandise business of the Company (whether or not any such Customer Receivables are then owned by them) is less than two—thirds of the highest arithmetic average amount of such Customer Receivables outstanding on the last day of each of any three consecutive

calendar months ending on or after the last day of the calendar month during which such series of Securities is issued, provided the Redemption Date is not more than 90 days next following the last day of any such later three—month period.

"Customer Receivables" are defined in the indentures as "amounts owing to the Company or its Affiliates as a result of sales of goods or services (including, but not limited to, financial services) whether by such entities or others." The customer receivables sold to Citicorp were amounts owed to Sears as the result of sales of its products. Pursuant to the language of section 4.8, such receivables are included in the redemption formula regardless of the fact that those receivables are no longer owned by them. Receivables generated after the sale to Citicorp are not owing to Sears and thus, would not be included in calculating the level of customer receivables under section 4.8.

■ The investors next argue that the definition of company in the Indentures includes Citicorp and, therefore, receivables generated after the sale also constitute customer receivables. We disagree. The indentures define "company" as Sears "and, subject to the provisions of Article IX, shall also include its successors and assigns." The words "subject to" are unambiguous and indicate a condition when used in a contract. *See Interway Inc. v. Alagna*, 85 Ill.App.3d 1094, 41 Ill.Dec. 117, 407 N.E.2d 615, 619–20 (1980). Section 9.1 of article IX addresses the merger, consolidation, or sale of substantially all of the assets of the company.[2] Thus, the defini-

---

2. Section 9.1 of the Indentures provides as follows:

> Nothing in this Indenture shall prevent any consolidation or merger of the Company with or into any other corporation, or any consolidation or merger of any oth-

er corporation with or into the Company, or any sale or transfer of all or substantially all of the property and assets of the Company to any other corporation lawfully entitled to acquire the same; provided, however, that, so long as Securities are

tion of company includes Sears and any other company or corporation that Sears merges or consolidates with or a company that purchases substantially all of Sears' assets. Citicorp does not fit within the indentures' definition of company.

We conclude that the indentures are unambiguous and that they allow Sears to redeem the bonds prior to maturity if the customer receivables fall below a high watermark for three consecutive months. Customer receivables include those that Sears owned as of the date of the sale but does not include those generated after the sale. We sustain Sears' first issue.

### Evidence of Breach

In its fourth issue, Sears contends the investors failed to establish a breach because they did not present any evidence of the level of customer receivables for the three-month period prior to redemption.

The jury found that Sears breached the indentures.[3] Sears redeemed the bonds pursuant to section 4.8 of the indentures. We have determined that the unambiguous language of section 4.8 means that Sears' customer receivables as of the date of the

sale to Citicorp continue to count for purposes of calculating when the receivables fall below the high watermark. Thus, to establish a breach, the investors had to establish that on February 2, 2004, the date that Sears redeemed the bonds, the customer receivables had not fallen below the high watermark on the last day of each of the preceding three months. After reviewing the evidence, we conclude that the investors failed to meet their burden.

Because Sears is challenging the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex.App.–Dallas 2006, pet. denied). To evaluate the legal sufficiency of the evidence to support a finding, we must "determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex.2002). We sustain a no evidence point only if there is no more than a

outstanding hereunder, the Company covenants and agrees that no such consolidation, merger, sale or transfer shall be made unless after giving effect to any such transaction Unencumbered assets plus Capitalized Rentals (calculated in each case for the surviving or acquiring corporation); and provided, further, that, so long as Securities are outstanding hereunder, the Company covenants and agrees, that any such consolidation, merger, sale or transfer shall be upon the condition that the due and punctual payment of the principal of (or premium, if any, on) and interest on, all the Securities according to their tenor, and the due and punctual performance and observance of all the terms, covenants and conditions of this Indenture to be kept or performed by the Company shall, by an indenture supplemental hereto, executed and delivered to the Trustee,

be assumed by the corporation (if other than the Company) formed by or resulting from any such consolidation or merger, or which shall have received the transfer of all or substantially all of the property and assets of the Company, just as fully and effectually as if such successor corporation had been the original party of the first part hereto; and in the event of any such sale or transfer the predecessor Company may be dissolved, wound up and liquidated at any time thereafter.

3. We note that the question submitted to the jury simply asked whether Sears breached the indentures by redeeming the bonds prior to their scheduled maturity. It is only a breach to redeem the bonds prior to scheduled maturity if receivables have not fallen below a high watermark for the preceding three-month period.

scintilla of evidence proving the elements of the claim. *Id.* at 520. In making this determination, we must "view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex.2005). We look to see whether any record evidence supports the challenged finding. *Casino Magic Corp. v. King*, 43 S.W.3d 14, 19 (Tex.App.–Dallas 2001, pet. denied). Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *Kroger Tex. Ltd. v. Suberu*, 216 S.W.3d 788, 793 (Tex.2006). An inference stacked only on other inferences is not legally sufficient evidence. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex.2003) (per curiam).

■ The plaintiff in any breach of contract case bears the burden of proving the breach. *See Perlman v. Time, Inc.*, 133 Ill.App.3d 348, 88 Ill.Dec. 524, 478 N.E.2d 1132, 1136 (1985); *Vandevier v. Mulay Plastics, Inc.*, 135 Ill.App.3d 787, 90 Ill. Dec. 558, 482 N.E.2d 377, 380 (1985). The investors attempt to shift this burden by arguing that it was Sears' burden to establish that it had the right to redeem the bonds when it did. Citing to *Camofi Master LDC v. College P'ship, Inc.*, 452 F.Supp.2d 462, 470 (S.D.N.Y.2006), they argue that their only burden was to show proof of the indentures and Sears' failure to make the required payments. *Camofi Master* is not on point. It was a suit on a promissory note. To establish a prima facie case of breach, the lenders simply had to show proof of the promissory note and that the borrower has failed to make payment. *Id.* Here, the investors contend that Sears breached the indentures when it redeemed the bonds prior to maturity. Redemption of the bonds was a breach

*only* if the requirements for redemption had not been met. Thus, it was the investors' burden to establish that, on February 2, 2004, Sears did not have the right to redeem the bonds under section 4.8 of the indentures.

Alternatively, the investors contend there is evidence of the amount of customer receivables during the pertinent three-month period. Most of the evidence they cite to, however, deals with the amount of receivables prior to the sale to Citicorp. This is not the pertinent time for establishing a breach under section 4.8. The only evidence the investors rely upon for the level of customer receivables following the sale is the testimony of Sears' damages expert, Michael Cragg. He prepared a runoff analysis to determine when Sears' customer receivables that it owned at the time of the sale to Citicorp would have naturally fallen below the high watermark. Cragg testified, that using the numbers from Robert Sherwin, the investors' damages expert, the bonds would have been redeemable by July 1, 2004. Thus, the investors contend, this testimony is evidence that the customer receivables were not at a level permitting redemption on February 2, 2004.

■ Taking a closer look at Cragg's runoff analysis, however, we see that his testimony is speculative at best. On cross-examination, he testified that there were competing choices of different ways to apply payments and that he *assumed* that payments would be applied to the oldest receivables first. His runoff analysis is based on the method that Sears had at one time used in paying off its receivables. Cragg infers that the bonds would have met section 4.8's formula for redemption by July 1, 2004. He reached this inference by assuming that the bonds would have been paid off according to the way Sears used to pay off its receivables at one time.

More importantly, following the sale, Citicorp paid off the receivables according to its own method. There is no evidence in the record that shows the payoff method used by Citicorp to pay off its receivables. Expert opinion must be supported by facts in evidence, not conjecture. *Marathon Corp.*, 106 S.W.3d at 729. We conclude that Cragg's speculative testimony built upon inferences and *assumptions* rather than facts in evidence does not constitute legally sufficient evidence. *See Id.* at 728.

It was the investors' burden to establish that Sears breached the indentures when it redeemed the bonds in February 2004. Critically, the investors failed to put on any evidence of the balance of the relevant customer receivables at the end of November 2003, December 2003, and January 2004. In his closing statement, the attorney for the investors argued as follows:

> Now let's walk through this one last time. I think it is very clear. First of all, remember that Sears had to demonstrate to you that they had the right to redeem early at face value. And they hitched their wagon to say three months, you know—they wanted to rewrite it and forget about the three months. How many times did they ask people, now, if suddenly, quickly, dramatically, all at once it goes way down you, know, below 66 percent then is triggered? Well, wait a minute. What about this three consecutive months, what about the declining receivables? But anyhow, they hitched their wagon to say September, October, and November of '03 were those three months. That's what they've said. When they issued the notice to say these are the three months, September, October, November of '03 it fell below some other higher number, and a lot of things were thrown around.

> Did they ever bring you those exact numbers? Have they ever showed you exactly? No. They just stood up and said, we sold it and essentially it dropped to zero, or maybe was 1.5 billion, or maybe it was—they didn't even do that. And then with their Mr. Cragg, they want to change things around a little bit. But what they based their, and claimed they had the right to do, was for what happened in September, October and November, but we don't really see that. . . .

This argument highlights the determinative issue in this case. It was not Sears' burden to put on evidence of the level of the customer receivables on the last day of the pertinent three-month period. Rather, it was the investors' burden to prove the breach. The only way to establish that Sears breached the indentures was to show that the mathematical formula permitting redemption under section 4.8 had not been met. Because the investors failed to present any evidence of breach, we sustain Sears' no evidence challenge asserted in its fourth issue.

We sustain Sears' first and fourth issues.[4] We reverse the trial court's judgment and render a take nothing judgment against the investors.

---

4. In light of our disposition of Sear's first and fourth issues, we do not address Sears' re-maining issues.