GEORGE H. EDDINGS, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)    Nos. 1—97—4325, 1—97—4544 cons.

Opinion filed June 3, 1999.

George H. Eddings, of Chicago, appellant *pro se.*

Marilyn F. Johnson and Dianna L. Mitchell, both of Board of Education of City of Chicago, of Chicago, for appellees.

JUSTICE HALL delivered the opinion of the court:

The case underlying this appeal is an administrative review action brought by plaintiff George H. Eddings in the circuit court against defendants Board of Education of the City of Chicago (School District No. 299) (Board), Illinois State Board of Education (State Board) and Henry X. Dietch, hearing officer. Eddings sought judicial review of his dismissal for cause from his employment by the Board's School District 299 as the principal of Julian High School in Chicago, Illinois, pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1992)). The State Board and its chief executive officer, the State

Superintendent of Education, are named as defendants because of their role in administering the dismissal system under section 34—85 of the Illinois School Code (Code) (105 ILCS 5/34—85 (West 1992)). The Honorable Henry X. Dietch was the person selected to preside as the state hearing officer, pursuant to the striking process contained in section 34—85 of the Code. Ill. Rev. Stat. 1991, ch. 122, par. 34—85.

On August 16, 1994, the circuit court denied Eddings' first amended complaint in administrative review. Eddings subsequently brought a *pro se* appeal, seeking to be restored to his principalship with the Board, with payment by the Board of all costs, back pay and benefits lost as a result of his discharge. On May 24, 1996, this court reversed the judgment of the circuit court and remanded the case, finding that the circuit court had erred when it denied Eddings' first amended complaint in administrative review. *Eddings v. Board of Education*, 279 Ill. App. 3d 1095 (1996) (unpublished order under Supreme Court Rule 23).

On remand, in an order entered September 10, 1996, the circuit court granted Eddings' first amended complaint in administrative review and ordered the Board to reinstate Eddings within 21 days "to a position of similar rank and equal salary for the position [he] held immediately prior to becoming principal." The circuit court further held that Eddings' request for damages would be determined at a later date.

On March 19, 1997, the circuit court awarded damages to Eddings in the amount of $263,228.05 for back pay, pension, and vacation as a principal from July 16, 1992, the date of his discharge, to June 30, 1995, the date his principal contract expired, as well as costs and fees in the amount of $2,904.09. (We note that the date of July 30, 1995, instead of June 30, 1995, mistakenly appears in the actual order.) The circuit court further awarded him back pay of $27,480.73 and pension pick-up of $1,923.65 as a teacher for the period October 1, 1996, to March 19, 1997. It also ordered the Board to provide the court with Eddings' salary and pension as a teacher for the period June 30, 1995 to October 1, 1996, and ordered Eddings to apply for teaching certification. (Again, we note that the date of July 30, 1995, instead of June 30, 1995, mistakenly appears in the actual order.) The damage hearing was continued to May 20, 1997.

On May 20, 1997, the circuit court ordered, among other things, that the Board had until June 3, 1997, to file a supplemental salary brief as to what Eddings would have earned as a teacher from the expiration of his principal contract until May 20, 1997, that its order reinstating Eddings as a teacher was a continuing order, and that damages to Eddings for back pay as a principal amounted to

$263,228.05 for back pay, pension and vacation, while fees amounted to $2,904.09. Although the Board determined that his salary and pension as a teacher from July 1, 1995, to May 20, 1997, would have been $100,055.55, the Board continued to object to Eddings' reinstatement as a teacher and his award of back pay and benefits as a teacher.

On August 13, 1997, in a final order, the circuit court awarded Eddings' former counsel an attorney's lien in the amount of $12,600 against the damages to be paid Eddings. It further ordered that Eddings was to be reinstated as a teacher and, as a continuing order, was to receive a salary and benefits. The court also awarded damages to Eddings for the period July 1, 1995, to May 20, 1997, based on a teacher's salary, in the amount of $93,509.86 for back salary and $6,545.69 for pension contribution, for a total of $100,055.55. The court reiterated its May 20, 1997, order, wherein it awarded "[d]amages to [Eddings] for back pay as a principal in the amount of $263,228.05 for back salary, pension and vacation pay; costs and fees to [Eddings] in the amount of $2,904.09."

On November 6, 1997, the circuit court denied the Board's motion for reconsideration. On November 26, 1997, the circuit court entered an order denying the Board's motion to stay enforcement of judgment, pending appeal and without bond. In said order, the court did not specifically refer to or incorporate the court's prior orders. Eddings and the Board appeal. In an order entered March 11, 1998, this court consolidated these appeals. No questions are raised on the pleadings.

On appeal, Eddings contends that the circuit court erred as a matter of law when it failed to reinstate him to his position as principal; that the circuit court erred as a matter of law when it failed to award him back salary and benefits as a principal from July 1, 1995, until the date of his reinstatement; that the circuit court erred as a matter of law when it failed to award him postjudgment interest on back salary, pension, and interest amounts on damages; and that the circuit court erred when it failed to enforce this court's May 24, 1996, order, reversing the circuit court order to make him whole.

On appeal, the Board contends that the circuit court erred as a matter of law when it reinstated Eddings as a teacher and awarded him back pay and benefits as a teacher.

For the reasons that follow, we affirm the circuit court's award of back pay, pension and vacation as a principal to Eddings from the date of his discharge to the end of his principal contract. We further affirm the circuit court's award of assessed costs to Eddings, as well as its award of an attorney's lien to Eddings' former counsel. We also hold that Eddings is entitled to postjudgment interest on the damages due him. However, we reverse the court's decision to reinstate Eddings to

a position of teacher and its decision to award him back pay and pension as a teacher.

The facts of this case have been set forth in detail in our Rule 23 order (*Eddings v. Board of Education*, 279 Ill. App. 3d 1095 (1996) (unpublished order under Supreme Court Rule 23). A brief summary of those facts pertinent to this appeal follows.

On April 15, 1991, Eddings signed a four-year performance contract with Julian Local School Council (JLSC) to become the principal of Julian High School for the period July 1, 1991, through June 30, 1995, pursuant to section 34—2.2 of the Code. Ill. Rev. Stat. 1991, ch. 122, par. 34—2.2. The JLSC had selected Eddings for the position. Eddings had been employed by the Board for more than 28 years, having worked as a teacher, assistant principal, elementary school principal and high school principal. It is undisputed that, prior to this matter, Eddings' work record is unblemished.

On October 9, 1991, the local school council elections were held for the 1991-93 term. On October 31, 1991, a newly elected JLSC was installed. The relationship between Eddings and the newly elected JLSC, which included seven new members, soon deteriorated. The JLSC subsequently voted to discharge Eddings for cause. Initially, the general superintendent and the Board declined the JLSC's request. Rather, the Board issued a warning resolution to Eddings on February 26, 1992. On July 10, 1992, a hearing officer conducted a dismissal hearing and recommended to the Board that Eddings be discharged. On July 15, 1992, the Board approved the request for dismissal of Eddings as principal of Julian High School, finding that Eddings' performance constituted cause pursuant to section 34—85 of the Code. On July 16, 1992, the general superintendent issued to Eddings a notice of suspension and request for dismissal, with charges and specifications proffered against him for violation of the provisions of his uniform principal performance contract and unsatisfactory performance and conduct.

On November 12, 1992, a discharge hearing was commenced before the Illinois State Board of Education, pursuant to section 34—85. On August 27, 1993, hearing officer Dietch affirmed the Board's dismissal of Eddings. On September 30, 1993, Eddings filed a complaint in administrative review in the circuit court. He subsequently filed a first amended complaint in administrative review, which, as previously stated, the circuit court denied.

As we stated in our Rule 23 order, this case, involving the discharge of a principal, is one of first impression in Illinois, as it is the first to be decided since the 1988 enactment of the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 34—1.01 *et seq.*), which established local school councils and eliminated the tenure of principals.

We first consider Eddings' contention that the trial court erred as a matter of law when it failed to order his reinstatement to the position of principal. We will simultaneously consider Eddings' contention that the trial court erred when it failed to uphold this court's May 24, 1996, order, reversing the trial court's order to make him whole.

Initially, Eddings asserts that this court in its May 24, 1996, decision, remanded the matter to the trial court to restore him to his principalship with the Board, with payment by the Board of all costs, back pay and benefits lost as a result of this action. Eddings is incorrect. A careful review of our Rule 23 order reveals that this court, without more, reversed the trial court's decision to deny Eddings' first amended complaint in administrative review. This court did not remand the case to restore Eddings to his position as principal or otherwise.

■ Furthermore, a review of the uniform principal performance contract (UPPC), which was entered into by Eddings and the JLSC, as agent for the Board, and which governed Eddings' employment as principal of Julian High School for the period July 1, 1991, through June 30, 1995, reveals that his reinstatement to the position of principal or otherwise was an impossibility. Section V of the contract sets forth the reasons or the methods by which the agreement could be terminated. Item (b) of that section states "discharge of the Principal for cause pursuant to Ill. Rev. Stat. ch. 122, sec. 34—85." Section VI of the contract, which is entitled "Expiration," states:

"This Agreement, including and not withstanding the procedures set forth herein, shall expire at the end of its stated term and shall not grant or create any contractual rights or other expectancy of continued employment beyond the term of this Agreement."

Section VII of the contract provides in relevant part:

"(d) Pursuant to Ill. Rev. Stat. ch. 122, sec. 34—8.1, in the event that the Local School Council decides not to renew this Agreement, the Principal's employment shall terminate upon expiration of this Agreement, and he/she shall not be reinstated to any former position which he/she previously held with the Board of Education. If otherwise qualified under the Illinois School Code, his/her name shall be placed on appropriate eligibility lists which the Board maintains for teaching positions."

Thus, the UPPC makes very clear that once Eddings' contract term expired on June 30, 1995, his employment as a principal or otherwise terminated.

Indeed, section VII(d) goes so far as to state that, after expiration of the contract, Eddings would not be reinstated to any former position he previously held with the Board, let alone be reinstated as

principal. As the Board points out in its brief, Eddings' request for reinstatement as a principal is tantamount to a request for an extension of the expired contract or a new contract altogether, neither of which was contemplated by the parties when they entered into the original contract.

Importantly, Eddings' UPPC is supported by statute. Section 34—8.1 of the Code (105 ILCS 5/34—8.1 (West 1992)), which provides that principals serve under four-year performance contracts, states in pertinent part:

"Commencing on July 1, 1990, or on July 1, 1991, and thereafter, the principal of each attendance center shall be the person selected in the manner provided by Section 34—2.3 to serve as principal of that attendance center under a 4 year performance contract. All performance contracts of principals expiring after July 1, 1990, or July 1, 1991, shall commence on July 1 of the year of their appointment, and the renewal of their performance contracts and the appointment of principals when their performance contracts are not renewed shall be governed by Sections 34—2.2 and 34—2.3. Whenever a vacancy in the office of a principal occurs for any reason other than the failure to renew the performance contract of that principal, the vacancy shall be filled in the manner provided by Section 34—2.3.

The board of education shall develop and prepare, in consultation with the organization representing principals, a 4 year performance contract for use at all attendance centers, and shall furnish the same to each local school council in January, 1990. The performance contract of each principal shall consist of the uniform performance contract, as developed or from time to time modified by the board, and such additional criteria as are established by a local school council pursuant to paragraph 3 of Section 34—2.3 for the performance contract of its principal.

During the term of his or her performance contract, a principal may be removed only as provided for in the performance contract except for cause. He or she shall also be obliged to follow the rules of the board of education concerning conduct and efficiency."

The August 5, 1996, affidavit of Joann Joyce, a coordinator in the Board's bureau of recruitment and staffing, sheds further light on the employment status of a principal whose UPPC has expired. Joyce averred in pertinent part:

"5. When a Principal's contract term has expired, the Principal can seek to have the contract renewed. If the Local School Council declines renewal of the contract, the Principal is no longer employed as a Principal in that school. However, the former Principal may seek employment as a teacher within the Chicago

Public School system providing that he/she has a current teaching certificate."

Joyce also averred the following. A former principal may apply to the local school council of other schools for selection as a principal if he has a current certificate and may also apply to become an assistant principal. The former principal has no right to any previous position with the Board. He may also apply for other administrative positions with the Board. Finally, Joyce averred that "[i]f the former principal does not find employment as a Principal, Assistant Principal, or Teacher or other administrative positions, employment by the Chicago Public Schools has ceased and the former Principal is not entitled to any benefits beyond the expiration date of the principal contract except that he is entitled to receive his/her health insurance for 90 days."

Based on the foregoing, Eddings could not have been reinstated to his position as principal after June 30, 1995, because his contract had expired. Furthermore, he could not have been awarded back salary and benefits as a principal after June 30, 1995, for the same reason. The affidavit of Willie Crittenden established that the JLSC selected her to be the principal of Julian High School on February 8, 1995, and awarded her a four-year UPPC for the period July 1, 1995, through June 30, 1999.

■ Moreover, courts in this state do not favor the specific performance of a personal services contract such as the one at issue. It is well settled that, with reference to such contracts, when specific performance is sought, a court should not compel an employee to work for his employer, nor compel an employer to retain an employee in his service. *Chady v. Solomon Schechter Day Schools*, 269 Ill. App. 3d 31, 645 N.E.2d 983 (1995). The proper remedy for a breach of a personal services contract is generally an action for monetary damages. *Bilut v. Northwestern University*, 269 Ill. App. 3d 125, 645 N.E.2d 536 (1994).

Eddings counters that defendants' reliance on the principal contract is contrary to the clear and unambiguous language of section 34—85, which he argues the legislature enacted to serve as a safeguard against wrongful discharges. Without such a remedy, Eddings argues, there would be no restraint against the wrongful discharge of principals, and defendants could engage principals in protracted litigation that extends beyond the expiration date of their contracts, thereby evading their reinstatement. Eddings asserts that this would give the Board the unrestricted capability to continue to punish plaintiff by not making him whole, even after a court has ruled in his favor.

Based on our interpretation of section 34—85, we find that the trial court's and Eddings' reliance thereon is misplaced.

In its September 10, 1996, order, the trial court stated that section

34—85 "preempts common law and provides for reinstatement as a remedy." Specifically, the trial court, in reinstating Eddings, relied on that portion of the statute which states:

> "If a decision of the hearing officer is adjudicated upon review or appeal in favor of the teacher or principal, then the trial court shall order reinstatement and shall determine the amount for which the board is liable including but not limited to loss of income and costs incurred therein." 105 ILCS 5/34—85 (West 1996).

The trial court further stated, among other things, that "[p]laintiff's wrongful dismissal will significantly impair him from finding a position of similar rank through no fault of his own. It is this Court's duty to restore Plaintiff to a position, both of rank and compensation, that he would have enjoyed but for the Defendants' actions." The trial court then ordered that Eddings be reinstated to a "position of similar rank and equal salary for the position [he] held immediately prior to becoming a principal." Subsequent orders of the trial court made clear that the court was ordering Eddings' reinstatement to the position of teacher.

While Eddings agrees section 34—85 mandated his reinstatement, he argues that the trial court should have reinstated him to the position of principal, because, based on the clear and unambiguous language of section 34—85, "[i]t was the unmistakable intent of the legislature to restore a wrongfully discharged principal to his former position as a principal" and it was not its intent to restore a principal to a teacher's position.

■ We find that, under the circumstances of this case, reinstatement of Eddings to the position of principal, teacher or otherwise was not proper, where Eddings' contract, which governed his employment by the Board, had expired prior to the time that hearing officer Dietch's decision was adjudicated upon review to be in favor of Eddings. Eddings' assertions to the contrary, section 34—8.1 and Eddings' contract apply to this case and provide sufficient legal support upon which a determination against reinstatement can be based. Moreover, section 34—8.1 and the contract terms do not contradict the subject language of section 34—85, where section 34—85 can be reasonably interpreted to mean that the trial court shall order reinstatement, if the contract has not expired. Thus, reinstatement can only occur when the principal has a viable contract. If he does not have a viable contract, the principal can be made whole by an award of money damages, namely, an award of back pay, benefits, and costs from the date of discharge to the date the contract term would have expired. We find that the remedy at law is adequate, where Eddings knew when he signed the four-year performance contract that he would have no ex-

pectancy of future employment by the Board once his contract term expired. Eddings' contract expired on June 30, 1995, whether or not Eddings was wrongfully discharged.

Accordingly, we find that the circuit court did not err when it found that Eddings could not be reinstated to the position of principal and could not be awarded back salary or benefits as a principal, beyond the expiration date of his principal contract. However, we find that the trial court erred as a matter of law when it reinstated Eddings as a teacher and awarded him back pay and benefits as a teacher.

In light of our decision, we need not consider Eddings' contention that the circuit court erred as a matter of law when it failed to award him back salary and benefits as a principal from July 1, 1995, the date his contract expired, until the date of his reinstatement as principal.

Eddings next contends that defendants are liable for lost investment amounts (interest) on his tax-sheltered annuities, since his ability to continue making contributions to his retirement annuity was terminated when he was wrongfully discharged.

■ Any award for such damages would be purely speculative. According to the affidavit of the Board's payroll director, all contributions to the annuity are voluntarily made by the employee, not the Board. Moreover, there was not sufficient evidence to establish Eddings' past history of contributions. Damages must be proven and can not be awarded on the basis of conjecture or speculation. *Branum v. Slezak Construction Co.*, 289 Ill. App. 3d 948, 682 N.E.2d 1165 (1997); *Callier v. Callier*, 142 Ill. App. 3d 407, 491 N.E.2d 505 (1986). The circuit court did not err when it held that Eddings was not entitled to lost investment value on contributions he may have made to his tax-sheltered annuity had he not been discharged.

Finally, Eddings contends that the trial court erred as a matter of law when it failed to award him postjudgment interest on the back salary, pension and interest amount portions of his awarded damages.

■ Section 2—1303 of the Code of Civil Procedure provides in relevant part:

> "Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a *** school district ***. When judgment is entered upon any award, *** interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment. Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time. The judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, ·stop the

further accrual of interest on such judgment notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment." 735 ILCS 5/2—1303 (West 1996).

In light of our decision, we find that Eddings is entitled to postjudgment interest on the $263,228.05 in back salary, pension and vacation pay as a principal and the $2,904.09 in costs. Eddings asserts that he is entitled to postjudgment interest from the date of the judgments on March 19, 1997, and May 20, 1997, forward. The Board maintains that postjudgment first interest begins to accrue on August 13, 1997, the date final judgment was entered in this case. We believe that the Board is correct. We therefore find that Eddings is entitled to accrued interest at a rate of 6% per annum on the unpaid sum of $266,132.14 from August 13, 1997, until such time as the Board tenders full payment of this sum, along with accrued interest.

In conclusion, because there is no contractual or statutory basis upon which Eddings could have been reinstated in any capacity with the Board once his contract expired, we affirm the circuit court decision not to reinstate him as principal, but reverse its decision to reinstate Eddings as teacher and its award of back salary and pension as a teacher in the amount of $100,055.55. We order the Board to pay Eddings the amount of $266,132.14, plus postjudgment interest on this sum, which represents the gross amount of his back salary, pension and vacation pay from the date of his discharge through the date his contract expired.

The judgment of the circuit court of Cook County is affirmed in part and reversed in part and remanded for a determination of the postjudgment interest amount to be awarded Eddings.

Affirmed in part and reversed in part; cause remanded.

SOUTH, P.J., and HOFFMAN, J., concur.[1]

---

[1]Justice Daniel J. McNamara participated in this case prior to his death. Justice Shelvin Louise Marie Hall is substituted on the panel to participate in the disposition of this appeal.