# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1167/No. 99-1242

_____

COMPUTROL, INC.,                          *
                                          *
    Plaintiff - Appellant/          *
    Cross-Appellee,                 *
                                          *
v.                                        * Appeal from the United States
                                          * District Court for the
NEWTREND, L.P. and                        * Eastern District of Missouri.
CA NEWTREND, INC.,                        *
                                          *
                                          *
                                          *
    Defendants - Appellees/         *
    Cross-Appellants.               *


_____

Submitted: December 13, 1999
    Filed:   February 10, 2000

_____


Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and MELLOY,[1] District Judge.

_____

---

[1] The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa, sitting by designation.

Melloy, District Judge.

After a 34-day trial in the Eastern District of Missouri, a jury awarded $2,663,000 to Appellant, Computrol, Inc., ("Computrol") on a breach of contract claim against Appellee Newtrend, L.P., and Appellee CA Newtrend, Inc., (collectively, "Newtrend"). The jury also decided against Newtrend and Newtrend CEO Robert King, in his individual capacity, on three common law fraud claims.

On post-trial motion, the district court[2] ruled as a matter of law that a contractual limitation of liability provision limited Computrol's breach of contract recovery to $469,206.88, and described Newtrend's proof of damages in excess of $469,206.88 as wholly speculative. The district court entered judgment in Computrol's favor in the amount of $469,206.88, plus $150,000 in attorneys fees. The district court also entered judgment as a matter of law against Computrol on the fraud claims, and denied Computrol's bill of costs. Computrol appealed the decision, and Newtrend cross-appealed. For the following reasons, we affirm the post-trial judgment of the district court.

I

Computrol develops custom computer software for the financial services industry, and Newtrend provides software and support services to financial

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

2

institutions. On December 28, 1992, Computrol entered into a contract with Newtrend to re-engineer a number of Newtrend's INFOPOINT software applications ("the Alliance Agreement"). INFOPOINT is a group of software packages utilized by Newtrend's banking customers. The Alliance Agreement contemplated that Computrol would begin performance under the Agreement by re-engineering Newtrend's Integrated Commercial Loan Application ("ICL"). If Newtrend successfully completed the initial re-engineering of the ICL, then Computrol would re-engineer one additional software application per year. The Agreement provided that Computrol would be paid $430,000 for re-engineering the ICL.[3]

Although the terms of the Agreement required Computrol to complete the ICL re-engineering project within 270 days of the date the Agreement was signed, the project quickly ran into technical problems. Additionally, the parties disagreed as to the specific terms of the Agreement. After extensive negotiations, the parties agreed to modifications in the software requirements and to increase Computrol's compensation for the project.

In May of 1993, the parties signed an addendum to the Agreement in which Computrol agreed to re-engineer an additional software application, the Integrated Installment Loan ("IIL"). The IIL project also encountered technical complications

---

[3]Computrol was also responsible for installation, training, and technical documentation related to the software. Additionally, the Agreement allowed Computrol to generate additional revenue by performing annual maintenance services and earn royalties from future INFOPOINT sales.

and never progressed beyond the planning phase.

The relationship between the parties subsequently deteriorated, with Newtrend providing written notice of default to Computrol on January 6, 1994. The notice stated, in pertinent part:

> This letter is an official NOTICE OF DEFAULT pursuant to paragraph 11.2 of the . . . Alliance Agreement . . . as modified by Letter Agreement of December 30, 1992 . . . . As evidenced by numerous letters, phone calls, and meetings between our companies, the Commercial Loan Project is months behind schedule, still significantly incomplete and does not contain several promised features. This is a material breach of the Agreement and grounds for termination. Technically, this contract gives you 90 days to cure the defaults, but it will be difficult to cure late delivery when the date has already passed. I suggest that you immediately return the $182,860 paid to date.

At the point Newtrend provided the written notice of default, Computrol had not actually delivered the ICL in its re-engineered format. At trial, the parties disagreed as to whether the ICL re-engineering project was substantially completed.

After Newtrend terminated the Agreement, Computrol filed the instant lawsuit. In its complaint, Computrol alleged claims against both Newtrend and Newtrend CEO King, in his individual capacity, for fraudulent misrepresentation (Count I) and fraudulent concealment (Count II). Computrol also alleged claims against only Newtrend for breach of contract (Count III), breach of fiduciary duty (Count IV), indemnification (Count V), breach of the covenant of good faith and fair dealing (Count VI), quantum meruit (Count VII), business defamation (Count VIII),

4

and injurious falsehood (Count IX). Newtrend counterclaimed for breach of contract (Count I), indemnification (Count II), breach of the covenant of good faith and fair dealing (Count III), and fraudulent inducement/fraudulent misrepresentation (Count IV).

At trial, Computrol advanced a theory it was an unwitting pawn in a larger corporate dispute between King and Newtrend's business affiliates.[4] Computrol introduced evidence that Newtrend actually terminated the Agreement because of the corporate dispute, and not because of performance difficulties, delays, or any other factor under Computrol's control. Computrol also presented evidence that Newtrend failed to comply with the termination provisions of the contract. The Agreement allowed a party to terminate only in the event of material or repeated breach and after the nonbreaching party provided the breaching party a detailed notice of deficiencies and a ninety-day cure period for defaults other than payment.

The district court submitted to the jury fraudulent misrepresentation and fraudulent concealment against Newtrend and King, and breach of fiduciary duty against Newtrend. The Court also submitted the breach of contract claim against Newtrend. As to Newtrend's counterclaims, the district court submitted breach of contract and fraudulent misrepresentation.

The jury returned a verdict in favor of Computrol and against Newtrend and

---

[4]The details of the corporate dispute and the structure of the joint venture between Newtrend and the business affiliates are quite complex, but irrelevant to the merits of this appeal.

King on one count of fraudulent misrepresentation and two counts of fraudulent concealment. The jury awarded $75,000 in damages on each fraud count against Newtrend, and $35,000 in damages on each fraud count against King. The jury also found in favor of Computrol on the breach of contract claim, and awarded $2,663,000 in damages. The jury ruled in favor of Computrol on all of Newtrend's counterclaims.

On post-trial motion, the district court ruled that Computrol's fraud claims and the breach of fiduciary duty claim failed as a matter of law. The district court reduced Computrol's breach of contract recovery from $2,663,000 to $469,206.88, for two reasons. First, the district court stated that the limitation of liability clause barred Computrol from recovering lost profits because "lost profits damages are considered consequential damages." The district court stated that since the parties agreed in the contract that they would not seek consequential damages, Computrol could not recover lost profits. Second, the district court concluded that Newtrend's proof of damages in excess of $469,206.88 was "wholly speculative."

Computrol timely filed a notice of appeal in the district court and raises two distinct issues on appeal. First, Computrol alleges that the district court erred when it reduced the jury's breach of contract verdict from $2,663,000 to $469,206.88. Computrol maintains that the limitation of liability clause did not bar lost profits, and that the proof of damages it offered at trial was sufficiently definite. Second, Computrol asserts that the district court abused its discretion when it awarded only $150,000 in attorney's fees and denied its bill of costs. On cross-appeal, Newtrend asserts that Computrol failed to make a submissible case for breach of contract.

6

II

Initially, the Court turns to the merits of the breach of contract claim. In its post-trial order, the district court ruled that Computrol submitted evidence from which a reasonable juror could find that Computrol adequately performed its duties under the contract. While Computrol did not complete the ICL in saleable form and the program had fewer functions than originally required under the contract, the district court ruled that Newtrend agreed to numerous extensions of time and to proposed modifications of the ICL software. The district court also ruled that Computrol presented sufficient evidence that Newtrend breached the termination for cause provision by failing to specify sufficiently the reasons it was terminating the Agreement and by failing to provide an adequate opportunity to cure. On appeal, Newtrend maintains that the district court should not have allowed the contract claim to go to the jury and should have ruled for Newtrend as a matter of law.

"Our review of a jury verdict is extremely deferential and we will not reverse for insufficient evidence unless after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party." *Morse v. Southern Union Co.*, 174 F.3d 917, 922 (8th Cir.), *cert. denied*, 120 S.Ct. 29 (1999) (internal quotations omitted). In this case, there is sufficient evidence from which a reasonable juror could find that Computrol performed its duties under the Agreement even if Computrol did not complete the ICL within the 270-day time frame. Newtrend Vice President Jerry Nissen testified that when Computrol programmers encountered outdated computer

7

code in the original ICL program, Newtrend authorized Computrol additional time and compensation to rewrite the new program. Nissen stated that Newtrend expected a delay after the company authorized the additional work. Computrol also presented testimony that it did not compete the ICL within the 270-day limit at least in part because Newtrend delayed approving the program design of the ICL for more than ten weeks. Finally, testimony at trial reflected that Newtrend submitted a number of change orders to the ICL program to include extra functions which accounted for additional delays. In light of the dynamic nature of the contractual relationship between Computrol and Newtrend, we find that a reasonable juror could have determined that Computrol satisfied its contractual obligations under the Agreement.

Computrol also presented testimony at trial that Newtrend breached the termination provision of the Agreement by failing to specify sufficiently its reasons for terminating the Agreement and by failing to allow Computrol adequate opportunity to cure. Newtrend witnesses admitted that Newtrend's notice of default letter failed to comply with the requirement that the party terminating the Agreement describe the deficiencies in detail. Moreover, Newtrend failed to afford Computrol the 90-day opportunity to cure that the Agreement provided. Accordingly, viewing the evidence in a light most favorable to the verdict, we find that Computrol presented a submissible case to the jury.

We now turn to the district court's decision to reduce Computrol's breach of contract jury award from $2,663,000 to $469,206.88. In its post-trial order amending the judgment under Fed. R. Civ. P. 59(e), the district court ruled that the

provision in the Alliance Agreement which expressly barred consequential damages precluded Computrol from recovering the lost profits it would have earned from re-engineering the follow-on software applications, and from projected sales of the software to other financial institutions. The limitation of liability provision states:

> In no event will either party be liable to the other for any special, incidental or consequential damages arising out of this Alliance Agreement. Except as otherwise expressly stated in this Alliance Agreement, each party's liability to the other for any cause whatsoever and regardless of the form of action and whether in contract or tort, or at law or equity shall in no event exceed the amounts actually paid to the other under this Alliance Agreement.

The district court ruled that Computrol was only entitled to recover the modified contract price of the ICL and for work performed on the IIL. Since the sum of the modified contract price for the ICL project and the cost of the work performed on the IIL only amounted to $469,206.88, the district court limited Computrol's recovery to that amount. As an alternative reason for reducing the award, the district court stated that Computrol's "value-added damage evidence [was] wholly speculative, and should have never been presented to the jury." On appeal, Computrol maintains that it presented sufficient evidence to support the jury's verdict and its implicit factual finding that the Alliance Agreement permits Computrol to recover lost profits.

The Court of Appeals reviews a district court's decision to grant a Rule 59(e) motion to alter or amend a judgment for abuse of discretion. *Perkins v. U.S. West Comm.*, 138 F.3d 336, 340 (8th Cir. 1998). "Little turns, however, on whether we

9

label the review of this particular question abuse of discretion or *de novo*, for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction." *Koon v. United States*, 518 U.S. 81, 100 (1996). A district court by definition abuses its discretion when it makes an error of law. *Id.* Accordingly, the Court of Appeals will review *de novo* the language of the Alliance Agreement. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) ("The district court's determination is reviewed *de novo*, 'without giving any deference to the interpretation by the first-line decider, here the district judge.'").

Computrol and Newtrend agree that Illinois law governs Computrol's contract claim. Illinois uses a "four corners" rule in the interpretation of contracts, holding that "if the language of a contract appears to admit only one interpretation, the case is indeed over." *AM Internat'l Inc. v. Graphic Management Assoc., Inc.*, 44 F.3d 572, 574 (7th Cir. 1995). Contracts "must be construed to give effect to the intention of the parties which, when there is no ambiguity in the terms of the [contract], must be determined from the language of the [contract] alone." *Flora Bank & Trust v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. App. Ct. 1991). "The terms of an agreement, if not ambiguous, should be generally enforced as they appear, and those terms will control the rights of the parties." *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 368 (1998).

Under the Illinois "four corners" rule, the threshold inquiry is whether the contract is ambiguous. *Ford v. Dovenmuehle Mortgage, Inc.*, 651 N.E.2d 751, 755 (Ill. App. Ct. 1995). "An instrument is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not

10

ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract. A contract is not rendered ambiguous simply because the parties do not agree on the meaning of its terms." *Flora Bank & Trust*, 583 N.E.2d at 725.

Illinois law allows parties to limit remedies and damages for breach of contract if no public policy bar exists. *Rayner Covering Sys., Inc. v. Danvers Farmers Elevator Co.*, 589 N.E.2d 1034, 1036 (Ill. App. Ct. 1992). While exculpatory or limitation of damages clauses are not favored and must be strictly construed against a benefitting party, *id.*, the basis for their enforcement is the strong public policy favoring freedom of contract. *Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968, 972-73 (Ill. 1997).

We find that the district court was correct when it ruled post-trial that the limitation of liability clause unambiguously precluded Computrol from recovering the prospective lost profits it would have earned for re-engineering the additional software applications. The limitation of liability provision in this case is fairly straightforward. In addition to prohibiting "special, incidental, or consequential damages," the limitation of liability clause dictates that contract damages "shall in no event exceed the amounts actually paid under the Agreement." When the Court considers both sentences of the limitation of liability provision in the context of the entire Agreement, *Trade Ctr., Inc. v. Dominick's Finer Foods, Inc.*, 711 N.E.2d 333, 335 (Ill. App. Ct. 1999) ("We consider the contract as a whole in order to ascertain the intent of the parties."), we find that Computrol and Newtrend intended to preclude liability in the form of prospective lost profits.

11

While the first sentence of the limitation of liability provision precludes "special, consequential, or incidental damages," the second sentence of the provision amplifies the limits on each party's liability. Specifically, the second sentence limits any contract recovery to *past damages* or "amounts already paid." We believe that because the term "amounts actually paid" is phrased in the past tense, the parties intended to foreclose all future damages, i.e., prospective lost profits.[5] Therefore, the district court was correct to reduce the judgment to $469,206.88.[6]

The district court articulated a second and alternative reason for reducing Computrol's breach of contact judgment: "[Computrol's] value-added damage evidence [was] wholly speculative, and should have never been presented to the jury." At oral argument, counsel for Computrol insisted that Computrol relied on Newtrend's profit projections and that numbers were "very do-able." Newtrend

---

[5]We are not convinced that the first sentence's restriction on "special, incidental, or consequential damages," standing alone, precludes the recovery of lost profits. The Seventh Circuit has unequivocally stated that "[l]ost profits are considered to be general or direct damages in a breach of contract case, while they are considered to be special or indirect damages in a tort case." *Moore v. Boating Indus. Assoc.*, 754 F.2d 698, 717 (7th Cir.), *vacated on other grounds*, 474 U.S. 895 (1985) (applying Illinois law). Thus, it is incorrect to classify mechanically the prospective lost profits portion of Computrol's damage award as consequential damages. However, both sentences of the clause together manifest an intent to foreclose prospective lost profits.

[6]We would also note that this holding does not preclude Computrol from recovering its past profits under the contract. The amount due and owing for past work, that is the $469,206.88 awarded by the district court, includes a profit factor in the contractual amount. Only future profits are foreclosed by the Agreement.

12

maintains that the district court was correct to bar the lost profit damage evidence as unduly speculative.

In Illinois as in most jurisdictions, the plaintiff must prove damages to a reasonable degree of certainty and evidence cannot be remote, speculative, or uncertain. *Eddings v. Board of Educ. of City of Chicago*, 712 N.E.2d 902, 908 (Ill. App. Ct. 1999). Lost profits are generally unavailable for new and unproven business ventures. *See Stuart Park Assoc. Ltd. Partnership v. Ameritech Pension Trust*, 51 F.3d 1319, 1323 (7th Cir. 1995) ("A new business generally has no right to recover lost profits.") (applying Illinois law).

We find no error in the district court's decision to reduce the breach of contract judgment because Computrol failed to prove its damages with sufficient certainty. At trial, the principal evidence that Computrol offered to support its profit projections for the subsequent INFOPOINT software applications was based on unrelated software products. Computrol's lost profits evidence stood in stark contrast to the evidence presented of Computrol's historical difficulty marketing its loan products. Additionally, Computrol encountered a number of technical problems in the first two software re-engineering projects. All of the profit numbers that Computrol presented assumed that the re-engineering projects would be completed on schedule and include the features that Newtrend and Computrol included in the original contract and change orders. Accordingly, the district court correctly limited Computrol's recovery and restricted Computrol's lost profits damages.

13

# III

At the completion of trial, Computrol moved for an award of $2,589,628.05 in attorneys' fees, $303,333.62 in expenses, and more than $300,000 in costs. Citing Fed. R. Civ. P. 54(d) and a contractual provision allowing a prevailing party to recover reasonable attorneys' fees, the district court awarded Computrol $150,000. On appeal, Computrol alleges that the district court improperly reduced the fees, expenses, and costs.

"The amount of an award of attorneys' fees rests within the sound discretion of the court and we will not disturb it absent clear abuse of that discretion." *Walton Gen. Contractors, Inc./Malco Steel, Inc. v. Chicago Forming, Inc.*, 111 F.3d 1376, 1385 (8th Cir. 1997); *Raffel v. Medallion Kitchens of Minnesota, Inc.*, 139 F.3d 1142, 1146-47 (7th Cir. 1998) (applying Illinois law). Additionally, while there is "a presumption that the prevailing party is entitled to costs," *Bathke v. Casey's General Stores, Inc.*, 64 F.3d 340, 347 (8th Cir. 1995), the district court also has substantial discretion in awarding costs. *Greaser v. State, Dept. of Corrections*, 145 F.3d 979, 985 (8th Cir.), *cert. denied*, 119 S.Ct. 620 (1998).

There is no dispute that Computrol is a prevailing party within the meaning of Rule 54(d) and the Alliance Agreement. Computrol argues that its status as the prevailing party entitles it to fees, expenses, and costs far in excess of the $150,000 figure awarded by the district court. However, Computrol ignores the fact that the Agreement afforded only reasonable attorneys' fees. Additionally, Rule 54(d) is phrased in permissive terms and generally grants a federal court the discretion to

14

refuse to tax costs in favor of the prevailing party. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987).

The district court characterized this case as a "relatively straightforward breach of contract case" which was unduly protracted by Computrol's painstakingly slow and complicated presentation of the evidence. The district court is in a better position than the Court of Appeals to assess the course of the litigation and the quality of work performed by the attorneys. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993). Accordingly, we are convinced that the district court did not abuse its discretion when it awarded Computrol $150,000 in attorneys fees, costs, and expenses under the circumstances of this case.

The post-trial judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.